IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **UNITED STATES OF AMERICA** | \* |
| | \* |
| v. | \* Criminal No. **PJM 99-0409** |
| | \* Civil No.     **PJM 16-1915** |
| **ANTONIO LAMONT LIGHTFOOT,** | \* |
| | \* |
| Defendant. | \* |

## **MEMORANDUM OPINION**

Antonio Lamont Lightfoot is serving a mandatory life sentence under 18 U.S.C. § 3559(c)—the federal "three-strikes" law—after a jury found him guilty of Bank Robbery in violation of 18 U.S.C. § 2113(d) (Count One) and Use of a Firearm During and in Relation to a Crime of Violence in violation of 18 U.S.C. § 924(c) (Count Two). Pursuant to 28 U.S.C. § 2255, he now seeks to vacate the mandatory life sentence entered against him, contending that he does not have the requisite convictions to sustain a § 3559(c) sentence. For the following reasons, his Motion is **DENIED**.

**I.**

On September 14, 1999, Lightfoot robbed a BB&T Bank in Camp Springs, Maryland, by waving a 9-millimeter semi-automatic handgun and demanding money from the teller. After fleeing with approximately $8,000 cash, he and his accomplice led a high-speed chase until they crashed in a residential neighborhood where they were apprehended by police.

On September 22, 1999, Lightfoot was charged in a two-count Indictment with Bank Robbery and Use of a Firearm During and in Relation to a Crime of Violence. Lightfoot pled not guilty and has maintained his innocence ever since. Before trial, the Government filed an information notifying the Court that Lightfoot had two prior "serious violent felony" convictions

1

for armed bank robbery in 1985 and 1990—making him eligible for a mandatory life sentence under § 3559(c). Lightfoot nevertheless proceeded to trial and was convicted on both counts.

At sentencing, the Court adopted the factual findings and advisory Sentencing Guidelines recommended in the Presentence Report, which deemed Lightfoot a career offender under U.S.S.G. § 4B1.1. Lightfoot was assigned an offense level of 34 and a criminal history category of VI, resulting in a Guidelines range of 262 to 327 months imprisonment. As contended by the Government, Lightfoot's prior convictions triggered a mandatory life sentence under § 3559(c). His conviction in this case was his "third-strike." In consequence, the Court imposed a life sentence as to Count One. On Count Two, the Court imposed a consecutive 7-year sentence, as was statutorily required. On direct appeal, Lightfoot's conviction and sentence were affirmed by the U.S. Court of Appeals for the Fourth Circuit. *See United States v. Lightfoot*, 6 F. App'x 181 (4th Cir. 2001).

In the years since, Lightfoot has challenged his conviction and sentence on different occasions. *See* ECF Nos. 41, 58–59. In 2016, he received authorization from the Fourth Circuit to file a successive § 2255 motion in light of *Johnson v. United States*, 576 U.S. 591 (2015). That Motion is now ripe.

## II.

Lightfoot contends that his mandatory life sentence must be vacated because one of his prior convictions—specifically, the 1990 conviction[1] for Bank, Safe and Vault Robbery in

---

[1] In 1990, Lightfoot was convicted of two different bank robberies under MCL § 750.531. However, they are only scored as one conviction because he was sentenced on the same day without an intervening arrest.

violation of Michigan Consolidated Laws ("MCL") § 750.531—no longer qualifies as a "serious violent felony" under § 3559(c). In other words, he says, he no longer has "three-strikes."[2]

The federal three-strikes law punishes recidivists by imposing mandatory life sentences following a defendant's third conviction for a "serious violent felony." The statute defines a serious violent felony as:

> (i) a Federal or State offense, by whatever designation and wherever committed, consisting of . . . robbery (as described in section 2111, 2113, or 2118); . . . or attempt, conspiracy, or solicitation to commit any of the above offenses; and
>
> (ii) any other offense punishable by a maximum term of imprisonment of 10 years or more that has as an element the use, attempted use, or threatened use of physical force against the person of another or that, by its nature, involves a substantial risk that physical force against the person of another may be used in the course of committing the offense.

18 U.S.C. § 3559(c)(2)(F)(i)–(ii). Subsection (i) contains what is referred to as the "enumerated offenses" clause, while subsection (ii) contains the "force" and "residual" clauses.

Lightfoot argues that vacatur of his life sentence is necessary because § 3559(c)'s residual clause is unconstitutionally vague under *Johnson* and its progeny. The Government apparently concedes as much but instead argues that MCL § 750.531 (1) is an enumerated offense and (2) has as an element the use, attempted use, or threatened use of physical force against another. Lightfoot, of course, staunchly opposes both propositions. Thus, the issue to be decided is whether MCL § 750.531 qualifies as a serious violent felony under either clause.

### A.

To determine whether a crime is a serious violent felony under 18 U.S.C. § 3559(c), courts are directed to apply the "categorical approach." *United States v. Johnson*, 915 F.3d 223, 228 (4th

---

[2] He also originally challenged his career offender designation under the Guidelines. However, he has apparently abandoned that argument following *United States v. Rumph*, 824 F. App'x 165, 168 (4th Cir. 2020). *See* ECF No. 91 at 17 n.6.

Cir. 2019) ("*Johnson II*"). Under that approach, an offense will only qualify if all criminal conduct proscribed by the statute of conviction—including the most innocent conduct—matches or is narrower than § 3559(c)'s definition (*i.e.*, the enumerated offenses or force clauses). *Descamps v. United States*, 570 U.S. 254, 257 (2013). In this undertaking, courts may only reference the elements of the offense, not the particular facts underlying it. *Id.* at 261. The court simply lines up the elements to see if they present a categorical match. *Id.*

A slightly different analysis—the modified categorical approach—applies when a statute is "divisible." *Id.* at 261–62. This occurs where the statute includes "multiple alternative elements (thus creating multiple versions of a crime), as opposed to multiple alternative means (of committing the same crime)." *Omargharib v. Holder*, 775 F.3d 192, 198 (4th Cir. 2014). Where there are multiple versions of the crime, "a later sentencing court cannot tell, without reviewing something more, if the defendant's conviction was for" one or the other alternative. *Descamps*, 570 U.S. at 262; *see also Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016). Accordingly, the modified categorical approach permits the Government to produce a limited number of documents demonstrating which version of the crime was committed, including the "charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Shepard v. United States*, 544 U.S. 13, 16 (2005). The court then determines "which of [the] statute's alternative elements formed the basis of the defendant's prior conviction." *Descamps*, 570 U.S. at 262. The categorical approach is applied to compare the appropriate offense of conviction with the definition of serious violent felony.

**B.**

The parties sharply disagree whether MCL § 750.531 is divisible in nature. According to the Government, the statute creates alternative elements proscribing different versions of the

4

crime: (1) assaultive bank robbery and (2) safecracking. Lightfoot, on the other hand, contends that the statute lists only multiple means of committing the same crime and is therefore indivisible.

Contributing to their disagreement is the statutory text of MCL § 750.531, which is hardly a model of clarity. It provides that:

> Any person who, with intent to commit the crime of larceny, or any felony, ***shall confine, maim, injure or wound, or attempt, or threaten to confine, kill, maim, injure or wound***, or ***shall put in fear any person*** for the purpose of stealing from any building, bank, safe or other depository of money, bond or other valuables, or ***shall by intimidation, fear or threats compel***, or attempt to compel any person to disclose or surrender the means of opening any building, bank, safe, vault or other depository of money, bonds, or other valuables, or ***shall attempt to break, burn, blow up or otherwise injure or destroy any safe, vault or other depository of money, bonds or other valuables in any building or place***, shall, whether he succeeds or fails in the perpetration of such larceny or felony, be guilty of a felony, punishable by imprisonment in the state prison for life or any term of years.

*Id.* (emphasis added). By the Government's interpretation, the disjunctive assaultive conduct described in the statute is divisible from the safecracking conduct. *See United States v. Allred*, 942 F.3d 641, 649 (4th Cir. 2019) ("When a criminal statute is phrased disjunctively it serves as a signal that it may well be divisible." (citing *United States v. Cornette*, 932 F.3d 204, 211–12 (4th Cir. 2019)). For Lightfoot, the two forms of conduct are one and the same.

When deciding whether a statute's components are different elements (divisible) as opposed to different means (indivisible), courts are directed to consult "authoritative sources of state law." *Mathis*, 136 S. Ct. at 2256. Doing so here reveals considerable authority favoring divisibility.

Indeed, Michigan appellate courts, Michigan's model jury instructions, and a leading Michigan treatise on criminal law support the Government's interpretation of MCL § 750.531. *See, e.g., People v. Campbell*, 418 N.W.2d 404, 406 (Mich. Ct. App. 1987) ("The bank robbery statute encompasses two distinct offenses, namely bank robbery involving assaultive conduct and safecracking."); *People v. Witt*, 364 N.W.2d 692, 695 (Mich. Ct. App. 1985) ("a plain reading of

5

the statute discloses that it encompasses two distinct offenses, namely, bank robbery involving assaultive conduct and safecracking"); *People v. Douglas*, 478 N.W.2d 737, 739 (Mich. Ct. App. 1991) ("Unlike the assaultive offense of bank robbery and the other offenses listed in the robbery crime list, safe breaking does not require the use of force or intimidation against another person, or even the presence of another person."); *People v. Keller*, No. 189558, 1996 WL 33357009, at *1 (Mich. Ct. App. Oct. 1, 1996) ("[MCL § 750.531] encompasses two distinct offenses; the assaultive crime of bank robbery perpetrated by any of the several enumerated means, and the nonassaultive crime of safe breaking" (citation omitted)); Mich. Model Crim. Jury Instr. §§ 18.5–18.6 (2006) (providing alternate instructions for assaultive bank robbery and safecracking); 4 Gillespie Mich. Crim. L. & Proc. § 131:29 (2d ed.) ("The statute encompasses two distinct offenses: the assaultive crime of bank robbery perpetrated by any of several enumerated means, and the nonassaultive crime of safe breaking."). Not only are state authorities generally in agreement; two panels of the U.S. Court of Appeals for the Sixth Circuit—where Michigan is located—have reached the same conclusion. *See United States v. Lucas*, 736 F. App'x 593, 596 (6th Cir. 2018) ("Therefore, as this court has recently found . . . 'the Michigan bank robbery statute contemplates multiple alternative elements,' and the statute is divisible into these two separate offenses." (quoting *United States v. Goodson*, 700 F. App'x 417, 422 (6th Cir. 2017)). The weight of these authorities tips decidedly towards divisibility.

Lightfoot seeks to discredit a case relied on by the Government, *People v. Campbell*, which found that MCL § 750.531 encompasses the distinct crimes of assaultive bank robbery and safecracking. *Campbell*, 418 N.W.2d at 406. In Lightfoot's view, *Campbell* is no longer good law after a contrary finding by a different panel of Michigan's Court of Appeals—its intermediate appellate court. That case, *People v. Ford*, provides Lightfoot with arguably supportive dicta, to

wit, MCL § 750.531 "establishes only *one offense* that may be committed by *multiple means*." 687 N.W.2d 119, 126 (Mich. Ct. App. 2004). For Lightfoot, this definitively answers whether MCL § 750.531 is divisible.

Because much of Lightfoot's divisibility argument hinges on *Ford*, an extended discussion of the case is warranted. In *Ford*, the defendant challenged a conviction for safe robbery and armed robbery, arguing that the dual conviction violated double jeopardy under state and federal law. 687 N.W.2d at 121. At the time, Michigan applied a non-elements-based test that looked to whether the two statutes protected the same "social norm." *Id.* at 124. By its embrace of the "social norms" test, Michigan appeared to repudiate the federal standard set forth in *United States v. Blockburger*, which required that each crime contain an element the other does not. *Id.* at 123. Thus, while a *Blockburger* analysis may be relevant in distinguishing between elements and means, the same is not necessarily true for Michigan's social norms test.

Although *Ford* discusses both the social norms and *Blockburger* tests, Lightfoot reads the case as only addressing the latter. Where *Ford* states—in *dicta*—that MCL § 750.531 "establishes only *one offense* that may be committed by *multiple means*," Lightfoot takes that to mean that it must be indivisible. That interpretation might make sense if the quoted language actually addressed the elements-based *Blockburger* test. But *Ford* speaks only to whether the statutes protect the same "social norms," concluding that "the bank robbery statute . . . has its core and focus on the attempted theft of property from a bank, safe, vault, or other depository. The 'unit of prosecution' under MCL § 750.531 is the bank, vault, or safe." 687 N.W.2d at 127. These are not the indicia of an elements-based inquiry; nor is there any discussion in *Ford* of the "elements vs. means" dichotomy relevant to divisibility. More importantly, when *Ford* finally addresses the *Blockburger* test, it merely finds that "the offense of armed robbery contains elements never required to prove

7

bank, safe, or vault robbery," and vice versa.[3] 687 N.W.2d at 128. Accordingly, *Ford*'s passing reference to "means" does not end the inquiry, and the Court must go beyond it.[4]

The Court finds that, while Lightfoot has identified some inconsistency in Michigan's intermediate appellate courts regarding whether MCL § 750.531 encompasses two distinct offenses, the majority of case law and academic sources support divisibility. When state law fails to provide a "definitive" answer to the divisibility/indivisibility question, the Supreme Court has instructed courts to "peek" at a select number of documents, including a defendant's charging instruments. *Mathis*, 136 S. Ct. at 2257 ("an indictment . . . could indicate, by referencing one alternative term to the exclusion of all others, that the statute contains a list of elements, each one of which goes toward a separate crime"). Here the Government has complied with that directive and has provided copies of Lightfoot's criminal complaints from his 1990 conviction. Those complaints reveal that "Defendant [Lightfoot] . . . did with the intent to commit the crime of robbery, put in fear ANDREA WALL for the purpose of stealing money from a bank; contrary to MCL 750.531," and "Defendant [Lightfoot] . . . did with the intent to commit the crime of robbery, put in fear JENNIFER COLLIER for the purpose of stealing money from a bank; contrary to MCL 750.531." ECF No. 85-1. The inclusion of "put in fear" to the exclusion of all other elements—namely, the elements of safecracking—further indicates that MCL § 750.531 is divisible in two parts: (1) assaultive bank robbery and (2) safecracking.

The Court therefore finds the modified categorical approach applicable. Looking at the *Shepard* documents provided by the Government, there is little doubt that Lightfoot was convicted

---

[3] For these reasons, *People v. Clemons*, is of limited relevance because it simply relied on *Ford*'s *dicta*. No. 291434, 2010 WL 2629880, at *8 (Mich. Ct. App. 2010).
[4] The Court is not persuaded by Lightfoot's demand that "this Court must accept [*Ford*'s] holding that Michigan bank robbery is an indivisible statute." ECF No. 91 at 6.

8

of assaultive bank robbery under MCL § 750.531. The Court therefore proceeds to compare the elements of assaultive bank robbery with § 3559(c)'s definition of serious violent felony.

### III.

Lightfoot begins by arguing that even if the Michigan statute is divisible, MCL § 750.531 is neither an enumerated offense nor does it contain an element of force. In response, the Government argues that MCL § 750.531 is indeed an enumerated offense, namely, "robbery (as described in section 2111, 2113, or 2118)." 18 U.S.C. § 3559(c)(2)(F)(i). The Court agrees with the Government.

### A.

The Fourth Circuit has provided comprehensive guidance for determining whether a given offense matches "robbery" as enumerated in § 3559(c). *See Johnson II*, 915 F.3d at 230. When comparing the crime of conviction (here, assaultive bank robbery) with "robbery" under § 3559(c), the Fourth Circuit has instructed courts to bear in mind that "Congress could hardly have been clearer in the text of the statute that § 3559(c)'s enumerated clause should be understood broadly," and "points decidedly towards inclusivity." *Johnson II*, 915 F.3d at 229. Because § 3559(c) exempts only specific robberies from its definition, *Johnson II* advises that "courts must be especially cautious in carving exceptions to § 3559(c) for the various state robbery offenses. Congress has already provided a fact-based escape hatch; courts are not at liberty to create additional ones." *Id.* The Fourth Circuit has reiterated that so long as a statute fits the "essence" of robbery—that is, a "taking" accomplished "by force and violence, or by intimidation"—there is a categorical match. *Id.* at 230–231; *see also* 18 U.S.C. § 2113(a) (proscribing a taking "by force and violence, or by intimidation").

## B.

With these precepts in mind, the Court concludes that assaultive bank robbery under MCL § 750.531 clearly "reflects the essence of robbery as Congress described it in § 3559(c)." *Johnson II*, 915 F.3d at 230. Assaultive bank robbery, like robbery as defined in § 3559(c), is achieved by a "taking" employing "force" or "violence," or by "putting in fear" another person. That assaultive bank robbery uses "different words to prohibit the same conduct"—*fear* as opposed to *intimidation*—"poses no barrier to a match in the § 3559(c) context." *Johnson II*, 915 F.3d at 231.

Lightfoot attempts to escape this conclusion by arguing that assaultive bank robbery can be violated by confining another without force, violence, or intimidation. ECF No. 91 at 11. He poses a somewhat far-fetched scenario of a bank robber locking the door behind bank tellers—thereby confining them without "physical force or threat of physical force." *Id.* at 12. While that fact pattern may be theoretically possible, it is highly doubtful that Michigan would apply MCL § 750.531 and uphold a conviction based on such conduct. *Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013). As the U.S. Supreme Court has held, the "focus on the minimum conduct criminalized by the state statute is not an invitation to apply 'legal imagination' to the state offense." *Id.* Perhaps more importantly, Lightfoot's hypothetical non-violent violation of assaultive bank robbery is at odds with the Supreme Court of Michigan's own understanding of "robbery" as a crime:

> Robbery is committed *only* when there is larceny from the person, *with the additional element of violence or intimidation.* Perkins on Criminal Law (2d ed.), pp. 279, 281. We are committed to the view that the crime of larceny from the person embraces the taking of property in the possession and immediate presence of the victim. *People v. Gould*, 384 Mich. 71, 179 N.W.2d 617 (1970). If such taking be by force and threat of violence, it is robbery, and hence every robbery would necessarily include larceny from the person and every armed robbery would necessarily include both unarmed robbery and larceny from the person as lesser included offenses.

*People v. Chamblis*, 236 N.W.2d 473, 481 (Mich. 1975) (emphasis added), *overruled on other grounds by People v. Cornell*, 646 N.W.2d 127 (Mich. 2002); *accord People v. Williams*, 814

10

N.W.2d 270, 279–80 (Mich. 2012) ("[T]he greater social harm perpetrated in a robbery is the use of force rather than the actual taking of another's property.").

In sum, assaultive bank robbery—Lightfoot's crime of conviction under Michigan law—matches the definition of robbery as an enumerated offense under § 3559(c).[5] It therefore constitutes a serious violent felony within the meaning of the federal three-strikes law such that Lightfoot's sentence remains as valid today as it was when he was originally sentenced in 2000.

## CONCLUSION

For the foregoing reasons, Lightfoot's Motion to Vacate Sentence is **DENIED**.

A separate Order will **ISSUE**.

/s/
_____
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

August 12, 2021

---

[5] Having determined that the assaultive form of MCL § 750.531 is an enumerated offense, the Court declines to address whether it would also satisfy the force clause.